IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **KELSI WALL**, individually and on behalf of all others similarly situated who consent to their inclusion in a collective action, | : : : : | Civil Action File No. |
| | : | |
| **Plaintiff,** | : | Jury Trial Demanded |
| | : | |
| **vs.** | : | |
| | : | |
| **TATTLE TAIL, INC. d/b/a TATTLETALE LOUNGE; DENIS G. KAUFMAN;** and **RICHARD R. SCHRONCE,** | : : : : | |
| | : | |
| **Defendants.** | : | |

---

## COMPLAINT

---

Plaintiff Kelsi Wall, individually and on behalf of all others similarly situated who consent to their inclusion in a collective action, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against Tattle Tail, Inc. d/b/a Tattletale Lounge (hereinafter "Tattletale"); Denis G. Kaufman; and Richard Schronce, and shows the Court as follows:

## INTRODUCTION

### 1.

This is an FLSA case. Wall bring this action because she was forced to participate in a mandatory, illegal tip sharing pool for the benefit of Defendants and—as a consequence—she was paid less than the required minimum wage. Wall often worked more than forty hours per week but was not paid overtime. Tattletale also wrongfully misclassified Wall's compensation in informational tax returns.

### 2.

Wall asserts collective action allegations and asks this Court to certify a collective of similarly situated individuals, to wit, all waitresses who have worked at Tattletale Lounge, within three years prior to the filing of this Complaint and who consent in writing to their inclusion in a collective action because other waitresses were treated in an identical manner.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C.

§ 216(b), 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Tattletale's principal place of business is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district. Moreover, Defendant Schronce resides in this judicial district.

## THE PARTIES

5.

Wall resides in Cobb County, Georgia.

6.

At all times material hereto, Defendants jointly operated Tattletale Lounge ("Tattletale Lounge"), located at 2075 Piedmont Rd NE, Atlanta, GA 30324.

7.

Tattletale is a corporation organized under the laws of the State of Georgia.

8.

Tattletale can be served via its registered agent, Denis G. Kaufman, at 2075-B Piedmont Road, NE, Atlanta, Georgia 30324.

9.

Tattletale is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

10.

Tattletale employed Wall as a waitress in and around Tattletale Lounge in Atlanta, Georgia from approximately December 2010 through approximately April 2012, and from October 2013 through May 2014.

11.

At all times material hereto, Tattletale has been an "employer" of Wall as defined in FLSA § 3(d), 29 U.S.C. §203(d).

12.

At all times material hereto, Wall has been an "employee" of Tattletale as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

13.

Kaufman is a resident of Broward County, Florida.

14.

Kaufman is subject to the personal jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91, because Kaufman transacts business in this state and owns, uses, or possesses real property situated within this state

15.

Kaufman can be served at his residence located at 3270 Lakeview Drive, Pompano Beach, Florida 33062, or wherever he can be found.

16.

Kaufman employed Wall as a waitress in and around Tattletale Lounge in Atlanta, Georgia from approximately December 2010 through approximately April 2012, and from October 2013 through May 2014.

17.

At all times material hereto, Kaufman has been an "employer" of Wall as defined in FLSA § 3(d), 29 U.S.C. §203(d).

18.

At all times material hereto, Wall has been an "employee" of Kaufman as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

19.

Schronce is a resident of Gwinnett County, Georgia.

20.

Schronce is subject to the personal jurisdiction of this Court.

21.

Schronce can be served at his residence at 1800 Millside Terrace, Dacula, Georgia 30019, or wherever he can be found.

22.

Schronce employed Wall as a waitress in and around Tattletale Lounge in Atlanta, Georgia from approximately December 2010 through approximately April 2012, and from October 2013 through May 2014.

23.

At all times material hereto, Schronce has been an "employer" of Wall as defined in FLSA § 3(d), 29 U.S.C. §203(d).

24.

At all times material hereto, Wall has been an "employee" of Schronce as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

25.

Collectively Kaufman and Schronce are referred to herein as the "Individual Defendants."

**Enterprise Coverage Allegations**

26.

At all times material hereto, Tattletale has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA § 6(a), 29 U.S.C. §§ 203(s)(1) and 206 (a).

27.

At all times material hereto, Tattletale had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

28.

At all times material hereto, Tattletale had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

29.

The "goods" or "materials" referenced in the previous paragraph include, but are not limited to, food, liquor, beer, wine, non-alcoholic beverages, credit card terminals, telephones, Internet service, and facsimile machines.

30.

In all relevant years, Tattletale had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the

retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

31.

In 2010, Tattletale had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

In 2011, Tattletale had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

33.

In 2012, Tattletale had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

34.

In 2013, Tattletale had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

In 2014, Tattletale had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

In 2015, Tattletale will have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

**Statutory Employer Allegations**

37.

At all times material hereto, Kaufman exercised operational control over the work activities of Wall.

38.

At all times material hereto, Kaufman was involved in the day to day operation of Tattletale.

39.

At all times material hereto, Tattletale vested Kaufman with supervisory authority over Wall.

40.

At all times material hereto, Kaufman exercised supervisory authority over Wall.

41.

At all times material hereto, Kaufman scheduled Wall's working hours or supervised the scheduling of her working hours.

42.

At all times material hereto, Kaufman exercised authority and supervision over Wall's compensation.

43.

At all times material hereto, Kaufman has been an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

44.

At all times material hereto, Schronce exercised operational control over the work activities of Wall.

45.

At all times material hereto, Schronce was involved in the day to day operation of Tattletale.

46.

At all times material hereto, Tattletale vested Schronce with supervisory authority over Wall.

47.

At all times material hereto, Schronce exercised supervisory authority over Wall.

48.

At all times material hereto, Schronce scheduled Wall's working hours or supervised the scheduling of Plaintiff's working hours.

49.

At all times material hereto, Schronce exercised authority and supervision over Wall's compensation.

50.

At all times material hereto, Schronce has been an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

**Common Factual Allegations**

51.

Defendants have operated Tattletale Lounge since at least early January 2010 and continuing through the present.

52.

At all times material hereto, the business of Defendants has been to provide entertainment to their customers in the form of nude female dancers, as well to sell alcoholic beverages and food.

53.

At all times material hereto, Defendants have employed waitresses who take food and drink orders from and deliver food and drinks to Defendants' customers at their tables.

54.

At all times material hereto, the Individual Defendants have jointly exercised operational control over the work activities of all waitresses at Tattletale Lounge.

55.

At all times material hereto, the Individual Defendants have been jointly involved in the day to day operation of Tattletale Lounge.

56.

At all times material hereto, Tattletale has vested the Individual Defendants with supervisory authority over all waitresses employed at Tattletale Lounge.

57.

At all times material hereto, the Individual Defendants have exercised supervisory authority over all waitresses employed at Tattletale Lounge.

58.

At all times material hereto, the Individual Defendants have jointly scheduled the working hours or supervised the scheduling of the working hours of all waitresses employed at Tattletale Lounge.

59.

At all times material hereto, the Individual Defendants have exercised authority and supervision over the compensation of all waitresses employed at Tattletale Lounge.

60.

At all times material hereto, the Individual Defendants have been the "employers" of all waitresses employed at Tattletale Lounge as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

61.

At all times material hereto, all waitresses employed at Tattletale Lounge have had similar job duties and responsibilities.

62.

At all times material hereto, Defendants have subjected all waitresses employed at Tattletale Lounge to the same scheduling policies, and procedures.

63.

At all times material hereto, Defendants have subjected all waitresses employed at Tattletale Lounge to the same rules of conduct.

64.

At all times material hereto, Defendants have compensated all waitresses employed at Tattletale Lounge in the same manner.

65.

At all times material hereto, Defendants paid Wall and all other waitresses employed at Tattletale Lounge $2.13 per hour plus tips as customarily tipped employees.

66.

At all times material hereto, Defendants also required Wall and all other waitresses employed at Tattletale Lounge to pay "house fees" to Defendants for each shift worked.

67.

At all times material hereto, Defendants also frequently required Wall and all other waitresses employed at Tattletale Lounge to pay Defendants for drawer shortages and for alleged failures to clean adequately at the end of their shifts.

68.

At all times material hereto, Wall worked five 8–10 hour shifts—without breaks—per week, such that in most workweeks she worked in excess of 40 hours.

69.

At all times material hereto, Defendants failed to pay Wall at one-and-one-half times her regular rate of pay for every hour worked in excess of 40 in any given workweek.

70.

At all times material hereto, Defendants have similarly failed to pay overtime wages to all waitresses employed at Tattletale Lounge who worked in excess of 40 in any given workweek.

71.

At all times material hereto, Defendants have failed to "post and keep posted a notice explaining the [FLSA] ... in [a] conspicuous place[]," as required by 29 CFR § 516.4.

72.

At all times material hereto, Defendants have failed to otherwise inform all waitresses of the minimum and overtime wage provisions of the FLSA.

73.

At all times material hereto, Tattletale has been a federal statutory "employer" of Wall and all other waitresses at Tattletale Lounge for the purposes of Medicare, Social Security, and federal income taxation.

74.

At all times material hereto, Wall and all other waitresses at Tattletale Lounge have been common law "employees" of the Tattletale.

75.

At all times material hereto, Wall and all other waitresses at Tattletale Lounge have been federal statutory "employees" of the Company for the purposes of Medicare, Social Security, and federal income taxation.

76.

In 2011, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall in 2010 as nonemployee compensation.

77.

In 2011, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2010 as nonemployee compensation.

78.

In 2011, Tattletale willfully filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service fraudulently categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2010 as nonemployee compensation.

79.

In 2012, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall in 2011 as nonemployee compensation.

80.

In 2012, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2011 as nonemployee compensation.

81.

In 2012, Tattletale willfully filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service fraudulently categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2011 as nonemployee compensation.

82.

In 2013, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall in 2012 as nonemployee compensation.

83.

In 2013, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2012 as nonemployee compensation.

84.

In 2013, Tattletale willfully filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service fraudulently categorizing certain

payments it made to Wall and all other Tattletale Lounge waitresses in 2012 as nonemployee compensation.

85.

In 2014, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall in 2013 as nonemployee compensation.

86.

In 2014, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2013 as nonemployee compensation.

87.

In 2014, Tattletale willfully filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service fraudulently categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2013 as nonemployee compensation.

88.

In 2015, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall in 2014 as nonemployee compensation.

89.

In 2015, Tattletale filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2014 as nonemployee compensation.

90.

In 2015, Tattletale willfully filed or caused to be filed a Form 1099-MISC with the Internal Revenue Service fraudulently categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses in 2014 as nonemployee compensation.

91.

In all relevant years, Tattletale willfully filed or caused to be filed Forms 1099-MISC with the Internal Revenue Service fraudulently categorizing certain payments it made to Wall and all other Tattletale Lounge waitresses for its own enrichment and in order to evade the payment of the employer's contribution to various payroll taxes.

92.

Wall has given her consent in writing to serve as a Plaintiff and Class Representative in a collective action pursuant to 29 USC 2l6(b) and to represent the interests of the class members with respect to all cognizable

claims under the Fair Labor Standards Act and other applicable laws. A copy of Wall's written consent is attached hereto.

## COUNT I — FAILURE TO PAY MINIMUM WAGES

93.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

94.

At all times material hereto, Wall has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

95.

At all times material hereto, Wall was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

96.

From approximately December 2010 through approximately April 2012, and from October 2013 through May 2014, Defendants failed to compensate Wall at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

97.

From approximately December 2010 through approximately April 2012, and from October 2013 through May 2014, Defendants willfully failed to compensate Wall at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

98.

Specifically, Defendants paid Wall $2.13 per hour plus tips as a customarily tipped employee, but also required her to pay "house fees" to Defendants for each shift worked.

99.

Defendants also frequently required Wall to pay Defendants for drawer shortages and for alleged failures to clean adequately at the end of her shifts.

100.

The amounts described above that Defendants required Wall to pay to Defendants constituted illegal kickbacks in violation of the FLSA's "free and clear" requirement.

101.

Alternatively, the amounts described above that Defendants required Wall to pay to Defendants constituted an illegal mandatory tip pool.

102.

Because of the acts of Defendants as alleged above, Defendants have failed to comply with the tip-credit provisions of the FLSA and Wall is entitled to minimum wages of $7.25 per hour for every hour worked.

103.

Wall is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

104.

Because Defendants have failed to "post and keep posted a notice explaining the [FLSA] ... in [a] conspicuous place[]," as required by 29 CFR § 516.4, the FLSA's statute of limitations for minimum wage claims should be tolled throughout the entire period of Wall's employment by Defendants.

105.

As a result of the willful underpayment of minimum wages as alleged above, Wall is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

106.

As a result of the underpayment of minimum wages as alleged above, Defendants are liable to Wall for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

107.

At all times material hereto, Defendants similarly failed to compensate all other waitresses employed at Tattletale Lounge at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

108.

As a result of the underpayment of minimum wages as alleged above, Defendants are liable to all other waitresses who were employed at Tattletale Lounge for their unpaid minimum wages, identical amounts in liquidated damages, and their litigation costs, including their reasonable attorney's fees.

## COUNT II — FAILURE TO PAY OVERTIME WAGES

109.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

110.

At all times material hereto, Wall has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

111.

At all times material hereto, Wall was not exempt from the overtime wage requirements of the FLSA by reason of any exemption.

112.

At all times material hereto, Wall was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

113.

From approximately December 2010 through approximately April 2012, and from October 2013 through May 2014, Wall regularly worked in excess of 40 hours each week.

114.

Specifically, Wall worked five 8–10 hour shifts—without breaks—per week, such that in most workweeks she worked in excess of 40 hours.

115.

At all times material hereto, Defendants failed to compensate Wall at one-and-one-half times her regular rate for work in excess of 40 hours in any workweek.

116.

At all times material hereto, Defendants willfully failed to pay Wall at one-and-one-half times her regular rate for work in excess of 40 hours in any workweek

117.

Wall is entitled to payment of overtime wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

118.

As a result of the willful nonpayment of overtime wages as alleged above, Wall is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

119.

As a result of the nonpayment of overtime wages as alleged above, Wall is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

120.

Because Defendants have failed to "post and keep posted a notice explaining the [FLSA] ... in [a] conspicuous place[]," as required by 29 CFR § 516.4, the FLSA's statute of limitations for overtime wage claims should be tolled throughout the entire period of Wall's employment by Defendants.

### 121.

At all times material hereto, Defendants similarly failed to pay required overtime wages to all other waitresses employed at Tattletale Lounge who worked in excess of 40 hours per week in any given workweek in accordance with the FLSA.

### 122.

As a result of the underpayment of overtime wages as alleged above, Defendants are liable to all other waitresses who were employed at Tattletale Lounge who worked in excess of 40 hours per week in any given workweek for their unpaid overtime wages, identical amounts in liquidated damages, and their litigation costs, including their reasonable attorney's fees.

## COUNT III – WILLFUL FILING OF FRAUDULENT TAX INFORMATION RETURNS AS TO DEFENDANT TATTLETALE

### 123.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 124.

At all times material hereto, all payments Defendants made to Wall was employee compensation.

125.

In 2011, 2012, 2013, 2014, and 2015, Tattletale fraudulently classified certain payments it made to Wall as nonemployee compensation for the purposes of its own enrichment and to avoid the payment of the employer contribution to various payroll taxes.

126.

In 2011, 2012, 2013, 2014, and 2015, Tattletale willfully filed IRS Forms 1099-MISC with the Internal Revenue Service fraudulently miscategorizing certain payments it made to Wall as nonemployee compensation.

127.

As a direct and predictable consequence of Tattletale's unlawful conduct through the fraudulent filing of tax information returns, Wall has suffered damages in amount to be proved at trial.

128.

Pursuant to 26 U.S.C. § 7434, Wall is entitled to recover damages caused by Tattletale's unlawful conduct through the fraudulent filing of tax information returns of not less than $5,000 per fraudulent filing, as well as her costs of litigation including her reasonable attorney's fees.

129.

In all relevant years, Tattletale has willfully filed IRS Forms 1099-MISC with the Internal Revenue Service fraudulently miscategorizing certain payments it made to all other Tattletale Lounge waitresses as nonemployee compensation.

130.

Pursuant to 26 U.S.C. § 7434, all other Tattletale waitresses are entitled to recover damages caused by Tattletale's unlawful conduct through the fraudulent filing of tax information returns of not less than $5,000 per fraudulent filing, as well as their costs of litigation including their reasonable attorney's fees.

## COUNT IV – COLLECTIVE ACTION ALLEGATIONS AS TO ALL DEFENDANTS

131.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

132.

At all times during the three years prior to the filing of this Complaint, Defendants have violated 29 U.S.C. § 206 by failing to pay minimum wages to all waitresses of Tattletale Lounge.

133.

At all times during the three years prior to the filing of this Complaint, Defendants have violated 29 U.S.C. § 206 by failing to pay minimum wages to all waitresses of Tattletale Lounge in the same manner as alleged above with respect to Wall.

134.

At all times during the three years prior to the filing of this Complaint, Defendants have violated 29 U.S.C. § 207 by failing to pay overtime wages to all waitresses of Tattletale Lounge.

135.

At all times during the three years prior to the filing of this Complaint, Defendants have violated 29 U.S.C. § 207 by failing to pay overtime wages to all waitresses of Tattletale Lounge in the same manner as alleged above with respect to Wall.

136.

At all times material hereto, Tattletale has violated 26 U.S.C. § 7434 with respect to all waitresses who have been employed at Tattletale Lounge during the three years prior to the filing of this Complaint by willfully filing fraudulent IRS Forms 1099-MISC with the Internal Revenue Service,

fraudulently misclassifying certain payments made to those individuals by Tattletale as nonemployee compensation.

137.

At all times material hereto, Tattletale has violated 26 U.S.C. § 7434 with respect to all waitresses who have been employed at Tattletale Lounge during the three years prior to the filing of this Complaint in the same manner as alleged above with respect to Wall.

138.

All waitresses who worked at Tattletale Lounge within the three years prior to the filing of this action are "similarly situated" within the meaning of FLSA § 16 (b), 29 U.S.C. § 216(b).

139.

Defendants are liable pursuant to 29 U.S.C. § 201 et seq. to all individuals similarly situated to Wall for unpaid minimum wages, unpaid overtime wages, damages pursuant to 26 U.S.C. § 7434, interest, attorney's fees and costs of litigation, and other such equitable and legal relief that this Court finds proper.

140.

The proposed collective of individuals similarly situated to Wall should be defined as "All individuals who have worked as waitresses at Tattletale Lounge in Atlanta, Georgia since March 2012 through the present."

141.

All such individuals similarly situated to Wall would benefit from the issuance of a Court supervised Notice of Present Lawsuit and opportunity to consent in writing to their inclusion as plaintiffs in this lawsuit pursuant to 29 U.S.C. § 216(b).

142.

All such individuals similarly situated to Wall are known to Defendants, are readily identifiable, and can be located through the records of Defendants and various local governmental entities.

WHEREFORE, Plaintiff respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against Defendants in unpaid minimum and overtime wages due under the FLSA, plus an additional like amount in liquidated damages;

3.     That the Court permanently enjoin Defendants from violating the minimum wage and overtime provisions of the FLSA;

4.     That Plaintiff be awarded her costs of litigation, including reasonable attorney's fees from Defendants;

5.     That the Court issue a Notice of Present Lawsuit to all individuals similarly situated to Plaintiff, allowing all such similarly-situated individuals to file their written consent to join this action as plaintiffs;

6.     That the Court award all such individuals who "opt in" to this lawsuit their unpaid minimum and overtime wages, liquidated damages, damages pursuant to 26 U.S.C. § 7434, and costs of litigation and reasonable attorney's fees from Defendants; and

7.     For such other and further relief as the Court deems just and proper.

Respectfully submitted,

|  | **DELONG CALDWELL BRIDGERS & FITZPATRICK, LLC** |
|---|---|

3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
(404) 979-3171
(404) 979-3170 (f)
michaelcaldwell@dcbflegal.com
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com

*/s/Michael A. Caldwell*
Michael A. Caldwell
Ga. Bar No. 102775

*/s/Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

*/s/ Matthew W. Herrington*
Matthew W. Herrington
Ga. Bar No. 275411

Counsel for Plaintiff